Date signed April 17, 2007



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | |
|---|---|
| IN RE: : | |
| : | |
| MARTIN TOBAR : | Case No. 05-23766PM |
| : | Chapter 7 |
| Debtor : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -: | |
| W. CLARKSON McDOW, JR. : | |
|   United States Trustee : | |
| : | |
| Plaintiff : | |
| vs. : | Adversary No. 06-1575PM |
| : | |
| MARTIN A. TOBAR : | |
| : | |
| Defendant : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -: | |

### MEMORANDUM OF DECISION

      This case is before the court on the Complaint filed by W. Clarkson McDow, Jr., United States Trustee, under § 727(a)(2)(B) of the Bankruptcy Code seeking a denial of the Debtor's discharge. After consideration of the testimony presented, the exhibits offered in evidence, and from the observation of the Debtor and his testimony in open court, the court finds the evidence is nearly in equipoise. However, the court finds, by a preponderance of the evidence, that the Plaintiff has met his burden. *See Farouki v. Emirates Bank International, Limited*, 14 F.3d 244, 250 (CA4 1994).

      The applicable Code section provides:

**11 U.S.C. § 727.  Discharge**

>(a) The court shall grant the debtor a discharge, unless--
>>(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>>>(B) property of the estate, after the date of the filing of the petition.

The evidence is uncontradicted.  Indeed, Debtor admits that following the filing of this bankruptcy case on June 14, 2005, on the advice of a coworker, on June 22, 2005, Debtor conveyed what he believed was his bare legal title to his one-half interest in property known as 3702 Brightview Street, Wheaton, Maryland, 20902, to his brother, Santos B. Tobar.  The court believes Debtor's testimony that as between his brother and him there was an understanding that his brother owned the property and the only reason that Debtor's name appeared in title was because his credit was required to support the mortgage loan for his brother.  Nonetheless, he held a one-half interest in the property.  Likewise, on June 27, 2005, Debtor signed a deed conveying his undivided interest as a tenant in common to property known as 13302 Galvez Street, Silver Spring, Maryland, 20906, to his wife.  The two deeds were recorded shortly thereafter.  The Debtor had substantial equity in both properties.  Debtor's explanation for the action in transferring the property was that he did so out of panic so as not to lose his house.

Upon learning of the transfers described above, Debtor's counsel properly disclosed these on Debtor's Statement of Financial Affairs in answer to Question No. 10.  Debtor's panic was understandable in that Debtor's salary was in the process of being attached by Children's National Medical Center, a creditor, the holder of unsecured Claim No. 1 in the sum of $216,308.29.  This Claim represented Debtor's responsibility for treatment rendered his son as a result of an automobile accident.  Debtor's son sustained permanent injuries and requires substantial care.  Furthermore, Debtor's wife also was injured and unable to work fulltime.  Having been told that he would lose his house in the bankruptcy, Debtor acted as he did.

While Debtor acted with the very highest motivation, and more to protect his family than to hinder, delay, or defraud a creditor, the fact is that he took this purposeful action to do so.  It had to be apparent to him that by conveying his interest in the two properties that such action would delay the Trustee's ability to liquidate Debtor's non-exempt assets and convert them to cash to pay the creditors.  It is unfortunate that Debtor and his wife were never advised earlier in

their marriage to convert the ownership of their house from a tenancy in common to a tenancy by the entireties that would have protected their residence against claims against one spouse only. It is also unfortunate that this transaction bears certain recognized values of fraud, namely, Debtor's insolvency, the lack of consideration for the conveyances, the relationship between the Debtor and the transferees, and Debtor's retention of possession of the property. *Wellcraft Marine Corp. v. Roeder*, 550 A.2d 377, 379-80 (Md. 1988), *citing Berger v. Hi-Gear Tire and Auto Supply, Inc.*, 263 A.2d 507 (1970).

The confluence of several such badges of fraud leads the court to the conclusion that at least at the time of the transfer and prior to the repentance, Debtor sought to delay the day of reckoning. *See, Max Sugarman Funeral Home, Inc. v. A. D. B. Investors*, 926 F.2d 1248, 1254-55 (CA4 1991). While the court notes that there is a total absence of concealment on the part of the Debtor, as stated above, the court doubts that the Debtor thought through that this action was a fraud on his creditors. The Plaintiff has sustained his burden that the Debtor sought by the transfers to delay the Trustee and his liquidation of the assets. An appropriate order will be entered.

Finally, it should be noted that there were three unsecured claims filed for this estate. One, a priority claim filed by Debtor's attorney, and the other two for the medical treatment required in connection with the tragedy involving Debtor's son. Fortunately, by virtue of the settlement agreement appearing at Docket Entry 83 in the record of the case file, it may be noted that the largest creditor, Children's National Medical Center, has shown its compassion for Debtor's situation by agreeing to take nothing further from him by way of wage garnishments and liens.

cc:
United States Trustee, 6305 Ivy Lane, #600, Greenbelt  MD  20770
David J. Kaminow, Esq., 50 West Montgomery Avenue, #230, Rockville, MD 20850
Martin A. Tobar, 13302 Galvez Street, Silver Spring, MD 20906

**End of Memorandum**